PRESENT: All the Justices

CALVIN HAMPTON

v. Record No. 191194

NOAH J. MEYER

OPINION BY
JUSTICE WILLIAM C. MIMS
August 27, 2020

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

In this appeal, we consider whether the misidentification of a defendant in a complaint

was a misnomer or a misjoinder, and whether the filing of a new complaint to correct it after a

nonsuit was barred by the statute of limitations.

## I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Calvin Hampton was a passenger in a 2005 Chevrolet Malibu when it was struck by a

1997 GMC Suburban outside a shopping mall after dark on Christmas Eve 2016. According to

the police report of the collision, the driver of the Suburban ran a red light while making a left

turn into the mall's entrance, striking the Malibu with sufficient force to propel it across the

intersection into a third vehicle waiting at a red light to exit the mall. Hampton was injured.

According to the police report, he, the driver of the Malibu, and the driver of the Suburban were

taken to the hospital by emergency medical services.

On December 11, 2018, Hampton filed a complaint seeking damages from the driver of

the Suburban. The complaint alleged that at the time of the collision the driver of the Suburban

"was approaching a red light on Midlothian Turnpike and attempting to make a left hand turn."

It alleged that the driver had a duty "to operate his vehicle with reasonable care and with due

regard for others using the road." It alleged that the driver "carelessly, recklessly, and

negligently operated his vehicle, disregarding a red light, and crashing into the front of the

vehicle in which" Hampton was a passenger.  It alleged that the driver of the Suburban was negligent by

> (a) fail[ing] to keep a proper lookout; (b) fail[ing] to give full time and attention to the operation of his vehicle; (c) fail[ing] to maintain his vehicle under proper control; (d) fail[ing] to obey traffic signals and disregard[ing] a red light in violation of Virginia Code § 46.2-833; (e) . . . never attempt[ing] to hit his brakes before the crash; and (f) crash[ing] into the vehicle that [Hampton] was riding in with enough force to push the vehicle he was riding in into another vehicle.

(Capitalizations omitted.)  The complaint alleged that as a result of this negligence, Hampton "has been caused to sustain serious and permanent injuries" and other damages.

Notably, the complaint alleged a cause of action for negligent operation of the Suburban by the person acting in the capacity of its driver.  All of the alleged acts arose from the manner of its operation.  The complaint alleged no cause of action connected in any way to the ownership of the Suburban by any person acting in the capacity of its owner.[1]

The police report identified the driver of the Suburban as Michael Patrick Meyer ("Michael"), including his driver's license number and address.  It identified the owner of the vehicle as Patricia Lynn Meyer ("Patricia"), including her address and insurance information.  It reflected that Michael was charged with violating Code § 46.2-833 by disregarding a red light. Relying on this police report, Hampton's complaint likewise identified Michael as the driver of the Suburban.  It did not identify Patricia as the owner, or name or refer to her in any way. Again, it made no allegations and asserted no claim arising from the ownership of the Suburban or against anyone acting in the capacity of its owner.

On January 18, 2019, the Meyers' insurer informed Hampton through counsel that Noah Meyer ("Noah") had been driving the Suburban at the time of the collision.  Michael was

---

[1] The complaint did not, for example, allege a cause of action for negligent entrustment by the owner(s) to the driver.  *Cf. Turner v. Lotts*, 244 Va. 554, 558 (1992).

2

actually Noah's father and a co-owner of the vehicle. The insurer had not provided this information earlier, despite communicating with Hampton about the collision in December 2016 and September 2017.

On February 6, 2019, Hampton obtained an order nonsuiting his complaint. On February 25, 2019, he filed a new complaint explaining that he had filed the 2018 complaint naming Michael as the driver based on the erroneous police report and that he had nonsuited that complaint upon learning the true name of the driver. He asserted that under this Court's decision in *Richmond v. Volk*, 291 Va. 60 (2016) ("*Volk*"), the use of the wrong name in his 2018 complaint was merely a misnomer rather than a misjoinder.

Other than changing the first name of the driver from Michael to Noah, the factual allegations in Hampton's 2019 complaint about what the driver of the Suburban had done were substantially the same as in his 2018 complaint. Like his 2018 complaint, Hampton's 2019 complaint alleged a cause of action for negligent operation of the Suburban by the person acting in the capacity of its driver. All of the alleged acts arose from the manner of its operation. The 2019 complaint alleged no cause of action connected in any way to its ownership by any person acting in the capacity of its owner.

Noah filed a plea in bar asserting that Hampton's 2019 complaint was time-barred. Hampton opposed it, arguing that in *Volk* this Court had reversed a circuit court's judgment dismissing a complaint as time-barred after the plaintiff nonsuited an earlier complaint incorrectly naming the defendant and filed a new complaint using her correct name. He argued that we ruled in *Volk* that because using the wrong name in the original complaint was merely a misnomer, the parties had not changed. According to him, we held that despite using the wrong name, other information in the original complaint in that case adequately identified the correct

3

defendant. Therefore, we ruled that Code § 8.01-229(E) had tolled the statute of limitations. He argued that the same principles applied with equal force in his own case.

After a hearing, the circuit court entered an amended order sustaining Noah's plea in bar, ruling that naming Michael in the 2018 complaint was a misjoinder, not a misnomer, because Michael and Noah were separate individuals and that Michael's name was not a misspelling of Noah's. Hampton filed a motion to reconsider, which the circuit court denied. In its final order, the court stated that "what is *determinative* is that Michael Meyer, by [Hampton's] own admissions in his complaint, is a real person . . . . Because of this, Michael Meyer was the improper party to be named and sued in the original action because he is a separate individual from Noah Meyer." (Emphasis added.)

We awarded Hampton this appeal.

## II. ANALYSIS

Whether the incorrect identification of a party is a misnomer or a misjoinder is a question of law reviewed de novo. *Volk*, 291 Va. at 64-65.

Hampton asserts that the circuit court erred by sustaining Noah's plea in bar because naming Michael as the driver of the Suburban in his 2018 complaint was a misnomer and *Volk* controls. He argues that a misnomer occurs when a defendant is properly identified but incorrectly named, and that courts look to the whole complaint to determine whether it adequately identifies the defendant. He argues that his 2018 complaint adequately identified the defendant as the driver of the Suburban—i.e., the person who committed the specific, alleged acts at the alleged time and in the alleged place, in the manner alleged, to cause the alleged injuries. Only one person drove the Suburban at the time of the collision, running the red light at the specified intersection to collide with the Malibu on the specified date, and that person—

4

whatever his or her name—caused Hampton's injuries. Consequently, under our holding in *Volk*, he continues, a new complaint correctly naming Noah after Hampton nonsuited the 2018 complaint that incorrectly named Michael was not time-barred. We agree.

> [W]here a complaint incorrectly names a party, such an error is either a misnomer or a misjoinder. A misnomer is a mistake in the name, not the identification, of a party. *See Rockwell v. Allman*, 211 Va. 560, 561 (1971) (per curiam) ("A misnomer is a mistake in name, but not person."). In other words, a misnomer occurs where the proper party to the underlying action has been identified, but incorrectly named. *Swann v. Marks*, 252 Va. 181, 184 (1996). Misjoinder, on the other hand, arises when "the person or entity identified by the pleading was not the person by or against whom the action could, or was intended to be, brought." *Estate of James v. Peyton*, 277 Va. 443, 452 (2009).
>
> . . . .
>
> The key distinction between a misnomer and misjoinder is whether the incorrectly named party in the pleading is, in fact, a correct party who has been sufficiently identified in the pleadings. To determine whether the mistake is a misnomer or misjoinder, "we consider the pleading as a whole." *Estate of James*, 277 Va. at 455.
>
>> Thus, whether a party named in a caption is a proper party to the action is to be determined not merely by how that party is identified in the caption of the pleading, but by the allegations set forth within a pleading that identify that party more specifically.
>
> *Id*.

*Volk*, 291 Va. at 64-65.

Noah argues that the circuit court correctly distinguished this case from *Volk*. In that case, the plaintiff's original complaint named the defendant incorrectly by concatenating the first name of the person who drove the vehicle at the time of the collision with the surname of the vehicle's owner. *Id.* at 62-63. The result, according to Noah and the circuit court, was the name of a person who did not exist. Noah asserts that this case is different because, as the circuit court noted, Michael does exist. Moreover, Michael was one of the vehicle's owners. We disagree.

The only issue in *Volk* was that the name created by coupling the driver's first name with the owner's surname was not the driver's correct name. We certainly did not rely on the

possibility that no such person existed—a possibility which was not a fact in evidence, and which Hampton asserts is disproved by searching public records—as the reason that the plaintiff's use of the resulting name was a misnomer. Rather, the plaintiff's use of that incorrect name was a misnomer because the complaint, read as a whole, contained sufficient allegations to identify the proper party defendant even though the incorrect name had been used. We ruled that the allegations "establish[ed] that the intended defendant was the driver of a specific vehicle that was in a specific location at a specific time and that the driver of that vehicle committed a specific act." *Id*. at 65. Only one person fit the description, so "it is readily apparent that she was the person against whom the action was intended to be brought." The plaintiff's use of the mistaken name therefore "was a misnomer and not misjoinder." *Id*.

The same is true here. It is clear from Hampton's 2018 complaint that he knew what the cause of action was and who—in terms of the performance of the tortious conduct alleged, from which his claim arose—was the correct defendant for such a cause of action: the driver of the Suburban who allegedly operated it negligently, thereby causing his injuries. It is clear that the 2018 complaint correctly identified that entity: the driver. It is clear whom Hampton intended to bring his cause of action for negligent driving against: the driver. Hampton sued the correct person—the driver—but used the wrong name, the one shown in the incorrect police report. Thus, there is no mistake of parties, only one of name. That is a misnomer.

Noah's argument that Michael exists and, further, is an owner of the Suburban is unavailing. As noted above, nothing in the complaint alleges any cause of action against the owner, only against the driver. All of the acts from which liability in this case allegedly arises were committed by one entity, a person acting in the capacity of the driver. None was committed by anyone in the capacity of an owner. Thus, the fact that Michael exists and was an

6

owner of the Suburban may have played some role in the development of this case—it may, for example, have been the reason that the police misidentified the driver of the Suburban in the police report—but it is a distinction without a difference when applying the rule articulated in *Volk* to the facts here.[2]

---

[2] The dissenting opinion in this case also observes that the misnamed defendant in *Volk* conceded that the plaintiff's error in that case was a misnomer. *Infra* at 15 ("Both [parties] conceded that the error was a misnomer."). However, as noted above, whether a misnomer has occurred is a question of law. *Volk*, 291 Va. at 64-65. "[A] question of law is not subject to a concession binding on this Court." *Virginia Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 389 (2014) (internal quotation marks and omission omitted); *see also Cofield v. Nuckles*, 239 Va. 186, 194 (1990) ("A party can concede the facts but cannot concede the law.").

Although the dissenting opinion notes that we "evaluated the parties' concession [in *Volk*] de novo and agreed with it," *infra* at 15, this inadvertently creates an opportunity to misunderstand our holding in *Volk* as being dependent on or influenced by the concession. It was not. We arrived at an independent legal conclusion, *Volk*, 291 Va. at 65 (emphasizing that "we are not bound by the parties' agreement on this issue"), albeit one that coincided with the positions taken by the parties. Thus, the *Volk* defendant's concession is not a basis to distinguish this case, because it played no part in our decision of that case.

Although the dissenting opinion asserts that the *Volk* defendant's concession influenced our reasoning there that it was "readily apparent" that she was the person against whom the plaintiff intended to bring the action, *infra* at 16 ("If the decisive issue before the *Volk* majority was whether the complaint could be fairly read to identify Volk as the defendant involved in the car wreck, how could it be totally irrelevant that Volk read the complaint and thought it clearly did?"), that assertion, too, is contradicted by our decision in that case. Our view that the identity of the intended defendant was "readily apparent" was not based on any motions she signed or orders she endorsed. *Cf. infra* at 14-16. To the contrary, it was based on

> the facts laid out in the 2011 complaint[, which] establish that the intended defendant was the driver of a specific vehicle that was in a specific location at a specific time and that the driver of that vehicle committed a specific act. As Volk is the only person that fits this description, it is readily apparent that she was the person against whom the action was intended to be brought.

291 Va. at 65.

Thus, it was the content of the plaintiff's complaint, not the defendant's acts, that led to our holding. That criterion is equally controlling here, where again only one person fits the complaint's description of the driver of a specific vehicle that was in a specific location at a specific time and that the driver of that vehicle committed a specific act. It is this same criterion that compels us to the same conclusion that Hampton's use of Michael's name in the 2018 complaint "was a misnomer and not misjoinder." *Id.*

Noah also argues that we ruled that naming an incorrect party was a misjoinder, not a misnomer, in *Ricketts v. Strange*, 293 Va. 101 (2017), after *Volk* was decided. But *Ricketts is* distinguishable from this case. The basis for distinguishing it also illustrates the point that we made in *Volk* and which controls here.

In *Ricketts*, the plaintiff suffered personal injuries in a February 2012 motor vehicle collision. In January 2014, she filed a complaint against the defendant. The defendant moved for summary judgment, asserting that the plaintiff lacked standing to sue him because she had filed a Chapter 7 bankruptcy petition in September 2012, that she had not exempted her personal injury cause of action from the bankruptcy estate, and that it therefore belonged to the bankruptcy trustee. 293 Va. at 104. Because the statute of limitations had by that time elapsed and a new complaint was time-barred, the plaintiff asserted that bringing the action in her own name, rather than in the name of the bankruptcy trustee, was a misnomer. She sought to cure it under Code § 8.01-6. *Id.* at 105. The circuit court denied her motion and we affirmed. *Id.* at 106, 110-11.

In *Ricketts*, there was a misjoinder, not a misnomer. While the allegations in the plaintiff's complaint may have adequately identified whom the defendant injured through his alleged negligence, that entity—the injured person—was not the entity who owned the cause of action while the bankruptcy proceeding was pending. The entity who owned the cause of action and who had standing to file the complaint was the bankruptcy trustee. The injured person and

---

As for the dissent's question—i.e., how could the defendant's belief that she was the party whom the plaintiff intended to sue be irrelevant to our holding in *Volk*?, *infra* at 16—the answer is simple: because we have already held that "'the allegations set forth within a pleading that identify that party more specifically'" are relevant to determine whether an incorrect name is a misjoinder or misnomer, *Volk*, 295 Va. at 65 (quoting *Estate of James*, 277 Va. at 455), not the defendant's opinion on the issue.

the bankruptcy trustee did not just have different names, they were separate legal entities—they acted in different and separate capacities. The plaintiff could not cure the defect that she lacked standing to bring the cause of action by *changing the entity* in whose name it had been brought. In this case, the defendant in Hampton's cause of action is a single entity—the driver of the Suburban—regardless of his or her name.

Noah also argues that reversing the circuit court's ruling will permit a personal injury plaintiff to file a complaint alleging specific facts about his or her claims but purposefully naming an incorrect defendant to conceal the case until the statute of limitations has elapsed, then take a nonsuit and refile using the correct name to the defendant's prejudice. Hampton responds that there was no prejudice in this case because the Meyers' insurer was aware of Hampton's claim as early as December 29, 2016, five days after the collision, when it sent him a letter asking for information about his claim. He also adds that the new complaint requires no changes to any substantive defenses to his cause of action.

Hampton's argument is more persuasive in this case. Noah has not identified any prejudice to him. The record indicates that naming Michael as the driver in the 2018 complaint was the result of good-faith reliance on the police report. While some plaintiff might be tempted to adopt the strained construction that Noah warns us about, acting on it would require a daring interpretation of Code § 8.01-271.1's requirement that the party or attorney signing such a complaint against a purposefully misnamed defendant certify that "to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact."

Finally, Noah argues that even if misidentifying the driver of the Suburban in the 2018 complaint was merely a misnomer, Code §§ 8.01-380 and 8.01-229(E)(3) do not toll the statute of limitations when a plaintiff takes a nonsuit to cure one. Rather, he asserts that Code § 8.01-6

provides the procedure for curing a misnomer so that the resulting amendment relates back to the filing of the original complaint for purposes of the statute of limitations. Although he acknowledges that the majority of this Court rejected this argument in *Volk*, he asks us to revisit it. We decline this invitation.

We considered the effect of and interaction among these statutes at length in *Volk*. "Since the decision [in that case] was announced, the General Assembly has met [four times] in regular session and has not acted to amend" any of them. "Under these circumstances, the construction given to the statute[s] is presumed to be sanctioned by the legislature and therefore becomes obligatory upon the courts." *Daniels v. Warden of Red Onion State Prison*, 266 Va. 399, 401 n.2 (2003) (applying the presumption after only two legislative sessions).

But a mere formalistic application of the presumption of legislative acquiescence pales before the importance of applying the principle of stare decisis in this case. As the Supreme Court of the United States has stated when considering whether stare decisis should bind it to a construction it adopted in an earlier case,

> precedent is to be respected unless the most convincing of reasons demonstrates that adherence to it puts us on a course that is sure error. "Beyond workability, the relevant factors in deciding whether to adhere to the principle of *stare decisis* include the antiquity of the precedent, the reliance interests at stake, and of course whether the decision was well reasoned."

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 362-63 (2010) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 792-93 (2009)).

*Volk* certainly is not an ancient precedent. We decided it in January 2016. *Cf. Jamerson v. Coleman-Adams Constr., Inc.*, 280 Va. 490, 504 & n.4 (2010) (Mims, J., concurring) (opining that a twenty-five-year-old opinion was hardly ancient when issued by a court tracing its existence to at least 1776). And our decision was not unanimous; three respected colleagues

disagreed with our holding, a fact some may invoke to question whether it was well-reasoned. But the holding that there is no change of parties when one complaint is nonsuited after a misnomer and new complaint is filed to cure it, so the earlier complaint tolls the statute of limitations, is not unworkable. And we view the reliance interests here to be particularly compelling.[3]

When Hampton discovered that the driver of the Suburban's name was wrong in the police report, and consequently in his 2018 complaint, he responded promptly by doing exactly what we said in *Volk* that plaintiffs could do, in a case where the facts were materially the same:[4] he nonsuited the complaint that used the incorrect name and filed a new complaint using the correct one. His reliance on *Volk* was no afterthought desperately invoked at the last minute after Noah's plea in bar; rather, it clearly influenced his decision from inception after he discovered the misidentification, because he cited it directly in his 2019 complaint. Thus, overruling our holding in *Volk* now, especially when the General Assembly has not indicated that our construction of the relevant statutes in that case contravenes what it intended when it enacted them, would be retroactive and punish Hampton simply for believing us.

---

[3] It is true that reliance interests for applying stare decisis are strongest when property rights are at stake. *Myers v. Moore*, 204 Va. 409, 413 (1963). They are substantially lower when dealing with the law of torts. *See Memorial Hosp., Inc. v. Oakes*, 200 Va. 878, 887 (1959). But the issue here is one of procedures available for correcting a misnomer, not the source of Hampton's cause of action. Prescribing procedure, subject to legislative oversight, is uniquely the function of this Court. *See* Code § 8.01-3.

[4] If anything, the facts in this case are more favorable to Hampton. As the dissent in *Volk* noted, the police report in that case got the driver's name right and the plaintiff's error was wholly her own. *Volk*, 291 Va. at 69 n.2 (Kelsey, J., dissenting). While we believe this factual distinction is noteworthy because it establishes the source of Hampton's mistake in this case and supports his assertion that the misidentification of the driver was made in good faith, we do not impute any motive for its inclusion in the *Volk* dissent. Rather, we merely cite the dissent because that is the only place in the *Volk* opinions where the fact is recorded.

Such an outcome would be unjust.  As we stated in another case where a party invited us to revisit an earlier decision and reach a different holding on an issue,

> [i]n Virginia, the doctrine of stare decisis is more than a mere cliche.  That doctrine plays a significant role in the orderly administration of justice by assuring consistent, predictable, and balanced application of legal principles.  And when a court of last resort has established a precedent, after full deliberation upon the issue by the court, the precedent will not be treated lightly or ignored, in the absence of flagrant error or mistake.

*Selected Risks Ins. Co. v. Dean*, 233 Va. 260, 265 (1987) (emphasis omitted).[5]

Accordingly, the reliance interests in this case not only justify the application of stare decisis but make it at least as important here as the presumption of legislative acquiescence.  We therefore reject Noah's invitation to reconsider *Volk*.

## III.  CONCLUSION

For the reasons set forth above, we hold that the misidentification of the driver of the Suburban in Hampton's 2018 complaint was merely a misnomer, not a misjoinder.  Consequently, under our holding in *Volk*, his 2019 complaint was not barred by the statute of limitations.  We therefore will reverse the circuit court's ruling sustaining Noah's plea in bar and remand for further proceedings.

*Reversed and remanded.*

---

[5] If we should come to believe, without indication from the General Assembly, that our holding in *Volk* that a plaintiff may use this procedure to cure a misnomer was the product of flagrant error or mistake, we have means at our disposal to correct ourselves prospectively, from that point forward, without punishing a party who has already relied on it because he or she believed that we meant what we said.  For example, we effectively overruled our holding in *Davis v. Marshall Homes, Inc.*, 265 Va. 159, 168 (2003), by enacting Rule 1:6.  In *Davis*, we applied the "same evidence test" to evaluate the "identity of the cause of action" element of our then-controlling res judicata analysis.  *E.g.*, *Rhoten v. Commonwealth*, 286 Va. 262, 270 (2013) (describing the effect of *Davis*).  However, by enacting the rule, we "expressly rejected" that test, thereby effectively overruling *Davis*.  *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135, 141 (2017).  Notably, our enactment of the rule did not affect already pending litigation.  *Caperton v. A.T. Massey Coal Co., Inc.*, 285 Va. 537, 551 (2013).

JUSTICE KELSEY, with whom CHIEF JUSTICE LEMONS and JUSTICE CHAFIN join, dissenting.

The majority holds that suing an *owner* of a vehicle instead of its *driver* is a mere misnomer, not a misjoinder of parties — a holding that conveniently allows the plaintiff to sue the driver even though the statute of limitations has run on any claims that may be brought against him. Under Virginia law, however, "[a] misnomer 'arises when the right person is incorrectly named, not where the wrong person is named.'" *Ricketts v. Strange*, 293 Va. 101, 110-11 (2017) (citation omitted).[1] The owner in this case was not the right person incorrectly named. He was the wrong person correctly named. The *mis* was not in the *nomer*.[2] It was in the *person* correctly named but incorrectly sued.

The majority heavily relies upon a single case, *Richmond v. Volk*, 291 Va. 60 (2016), to reach two conclusions: (i) the plaintiff's complaint filed against the owner of the vehicle, Michael P. Meyer, rather than its driver, Noah J. Meyer, involves a mere misnomer, and (ii) this misnomer tolls the statute of limitations when the plaintiff takes a nonsuit to cure the misnomer. The majority invokes the doctrine of stare decisis to support both conclusions — the first implicitly, the second explicitly. The majority warns that rejecting these conjoined conclusions

---

[1] *See also* W. Hamilton Bryson, Bryson on Virginia Civil Procedure § 5.01, at 5-2 to -3 (5th ed. 2017) ("There can be an amendment where the wrong person was sued, but this is not a matter of correcting a misnomer but of adding a new party."); Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 5.8, at 535 (6th ed. 2014) ("[A]n amendment to correct a misnomer will not be allowed where, in fact, the wrong person had been named."); *id.* § 11.2[C], at 824 (observing that the misnomer doctrine "applies when the correct person has been served and is before the court, but the nomenclature used to describe the defendant is incomplete or inaccurate" but "does not apply when the 'wrong person' has been served"); *id.* at 826 ("The 'misnomer' doctrine is not applicable when a different person would be brought before the court by an amendment.").

[2] The word "misnomer" is formed from the French prefix "mes" and the French root word "nommer," which means "to name." Webster's Third New International Dictionary 1444 (1993).

13

would "punish" the plaintiff "simply for believing" what *Volk* so clearly said. *Ante* at 11. And any tolerance toward inflicting such punishment, the majority adds, would downgrade the ancient doctrine of stare decisis to the status of "a mere cliché." *See ante* at 12 (citation omitted).

For several reasons, I disagree.

## I.

## A.

Let me begin with *Volk*. In that case, the original complaint stated the name of the defendant as "Katherine E. Cornett." *Volk*, 291 Va. at 63. The name of the defendant listed on the clerk of court's summons was "Katherine E. Cornett a/k/a Katherine Craft," *id.*, and the summons warned the Cornett-a/k/a-Craft "party" that she would be held in default if she failed to respond to the complaint within 21 days, Joint Appendix at 18, *Volk*, 291 Va. 60 (Record No. 150192). Though she denied being "also known as" Katherine E. Cornett, Katherine E. Volk (whose maiden name was Craft at the time of the accident) filed a motion to quash contesting the service of process. In doing so, she expressly conceded that *she* was "erroneously identified in the caption of [the plaintiff's] complaint as 'Katherine E. Cornett.'" *Volk*, 291 Va. at 63. As "Counsel for Defendant," Volk's counsel later endorsed the nonsuit order that listed "Katherine E. Cornett" as the defendant. *Id.*

The plaintiff subsequently filed a suit against "Katherine E. Volk, f/k/a Katherine E. Craft, a/k/a Katherine E. Cornett," but the circuit court granted Volk's special plea in bar and dismissed the case. *Id.* at 63-64. The circuit court held that the suit was barred by the statute of limitations because Volk was "not the same person or entity as Katherine E. Cornett" and because the plaintiff had not timely sought to correct the error in the original complaint. *Id.*

14

On appeal, neither party asserted that this scenario involved a misjoinder. Both conceded that the error was a mere misnomer. As the *Volk* majority recognized, "the parties agree that [the plaintiff's] use of the name 'Katherine E. Cornett' was a misnomer." *Id.* at 64. The *Volk* majority evaluated the parties' concession de novo and agreed with it. Three unique facts not found in any prior case were conspicuously present in *Volk*:

- The clerk of court's summons identified Katherine Craft (one of the defendant's true names) as an "a/k/a" of Katherine E. Cornett (the mistaken name). *Id.* at 63.

- Katherine E. Volk (the true defendant) filed a motion to quash contesting service of process and conceded that she was "erroneously identified in the caption of [the plaintiff's] complaint." *Id.*

- Counsel for Katherine E. Volk (the true defendant) signed the nonsuit order as "Counsel for Defendant" when the "Defendant" was listed as "Katherine E. Cornett." *Id.*

These facts confirmed the parties' concession in the circuit court and on appeal "that [the plaintiff's] use of the name 'Katherine E. Cornett' was a misnomer." *Id.* at 64.

I do not accept the majority's assurance that the misnomer concession in *Volk* "played no part in our decision of that case" because a "question of law is not subject to a concession binding on this Court." *Ante* at 7 n.2 (citation omitted). It is true, of course, that concessions of law, while capable of triggering procedural defaults, can never compel a Virginia court to misstate the law. *See Butcher v. Commonwealth*, 838 S.E.2d 538, 539 (Va. 2020). But that is not the manner in which the misnomer concession crept into the *Volk* analysis.

The complaint in *Volk* alleged "that the intended defendant was the driver of a specific vehicle that was in a specific location at a specific time and that the driver of that vehicle committed a specific act." *Volk*, 291 Va. at 65. Upon reviewing these "specific" factual allegations, the *Volk* majority concluded: "As Volk is the only person that fits this description, it

15

is readily apparent that she was the person against whom the action was intended to be brought." *Id.* With her concession, Volk was simply admitting that, upon reading the complaint, it was also "readily apparent" to *her* that *she* was the "only person that fits this description" in that "specific vehicle" at that "specific location" at that "specific time" involved in that "specific act." *See id.* Volk's concession was not a futile attempt at a binding concession of law but was instead a highly relevant factual concession that informed the ultimate question of law.

If the decisive issue before the *Volk* majority was whether the complaint could be fairly read to identify Volk as the defendant involved in the car wreck, how could it be totally irrelevant that Volk read the complaint and thought it clearly did? She was there after all. None of us were. That explains why Volk, despite the misspelling of her name in the complaint and the inclusion of her correct name as an a/k/a identity in the summons, filed a motion to quash service of process *as the defendant* and signed the nonsuit order *as the defendant*. I am thus unpersuaded by the majority's assurance that Volk's concession "played no part in our decision of that case." *Ante* at 7 n.2.

At any rate, those of us in dissent mused over the "tangled narrative of this case," *Volk*, 291 Va. at 71 (Kelsey, J., dissenting), but found it mostly irrelevant to the legal issue in the case. We believed that "[u]nder Code § 8.01-6 . . . *only a court* can correct 'a misnomer or otherwise' in a plaintiff's complaint" and that "[n]othing in the nonsuit statute, Code § 8.01-380, or its related tolling statute, Code § 8.01-229(E)(3), implies that a plaintiff can unilaterally correct a misnomer with a refiled pleading — thereby rendering Code § 8.01-6 irrelevant." *Id.* (emphasis in original). The majority in *Volk* disagreed, however, holding that when a refiled pleading changes a name "for the purpose of correcting a misnomer," Code § 8.01-6 is irrelevant. *Id.* at 67 (majority opinion).

16

B.

Embracing stare decisis, I accept the *Volk* holding that a misnomer tolls the statute of limitations when a nonsuit is taken to cure the misnomer. The contest over the tolling of the statute of limitations arose in the context of a debatable question of statutory interpretation, which could be easily corrected legislatively if the 4-3 split decision in *Volk* misperceived the General Assembly's intent. Stare decisis is at its zenith in circumstances like this. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 298 (2014) (Thomas, J., concurring in the judgment) (acknowledging the consensus view that stare decisis has "special force" in the "context of statutory interpretation" (citation omitted)); Bryan A. Garner et al., The Law of Judicial Precedent 333, 352, 409-10 (2016) (same); 2B Norman J. Singer & J.D. Shambie Singer, Sutherland's Statutes and Statutory Construction § 49:4, at 22 (7th ed. 2012) (observing that "considerations of stare decisis weigh heavily in the area of statutory construction" (citation omitted)).

What I do not accept is that the stare decisis tailwind of *Volk* compels us to hold that a plaintiff commits a mere misnomer when he sues a vehicle owner instead of its driver in a personal injury suit arising from a vehicle accident. *Volk* did not address that question at all. Reviewing the matter de novo, the *Volk* majority accepted the factual basis for the parties' concession that a mere misnomer had occurred. One of the correct names of the defendant appeared as an "a/k/a" name in the clerk of court's summons accompanying the incorrect name from the complaint. *Volk*, 291 Va. at 63. The correctly named defendant, despite the misspelling of her name in the complaint, filed a motion to quash service of process as the defendant and signed the nonsuit order as the defendant.

17

The fact pattern in *Volk*, the arguments of the parties in *Volk*, and the holding of *Volk* inform — but do not dictate — our independent analysis of the present case. Stare decisis is a common-law doctrine baked into the very nature of the "judicial power of the Commonwealth," Va. Const. art. VI, § 1. When properly applied, it requires more than a cut-and-paste approach from the most recent judicial opinion on a subject. Lord Mansfield captured the idea succinctly, observing that "precedent, though it be evidence of law, is not law in itself; much less the whole of the law." *Jones v. Randall* (1774) 98 Eng. Rep. 706, 707; Lofft 384, 385. This view was accepted wisdom among the very jurists that developed stare decisis. Those jurists uniformly "thought that the cases were not themselves the common law of England, but are only evidence of the common law." W. Hamilton Bryson, *Summary Conclusion*, *in* 1 Ratio Decidendi: Guiding Principles of Judicial Decisions 283, 287 (W. Hamilton Bryson & Serge Dauchy eds., 2006).[3] The earliest American jurists were in full agreement with this view of the nature of judicial precedent.[4]

---

[3] *See, e.g.*, 1 William Blackstone, Commentaries *71 ("[T]he decisions of the courts of justice are the evidence of what is common law . . . ."); Coke upon Littleton § 254a (Thomas Coventry ed., 1830) ("Here it appears that our book-cases are the best proofs [of] what the law is . . . ."); Matthew Hale, The History of the Common Law of England 67 (3d ed. 1739) (observing that court decisions "have a great Weight and Authority in Expounding, Declaring, and Publishing what the Law of this Kingdom is" but noting that such decisions "are less than a Law, yet they are a greater Evidence thereof than the Opinion of any private Persons"). *See generally* Rupert Cross & J.W. Harris, Precedent in English Law 25 (4th ed. 1991) (describing "'the declaratory theory' hallowed by Coke, Hale, and Blackstone" under which "the decisions of the judges never make the law, they merely constitute evidence of what the law is"); 9 The Works of Francis Bacon 888 (James Spedding et al. eds., 1882) ("It is a sound precept not to take the law from the rules, but to make the rule from the existing law. For the proof is not to be sought from the words of the rule, as if it were the text of the law. The rule, like the magnetic needle, points at the law, but does not settle it.").

[4] *See, e.g.*, *Kerlin's Lessee v. Bull*, 1 U.S. (1 Dall.) 175, 178 (Pa. 1786) ("A Court is not bound to give the like judgment, which had been given by a former Court, unless they are of opinion that the first judgment was according to law; for any Court may err; and if a Judge conceives, that a judgment given by a former Court is erroneous, he ought not in conscience to

18

Things have changed, to be sure. But that ancient judicial humility still lives in Justice Frankfurter's admonition that stare decisis should not be treated as "a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience." *Helvering v. Hallock*, 309 U.S. 106, 119 (1940); *see also Ramos v. Louisiana*, 140 S. Ct. 1390, 1405 (2020) (recognizing that "stare decisis isn't supposed to be the art of methodically ignoring what everyone knows to be true" and that "stare decisis has never been treated as an 'inexorable command'" (citation omitted)).

Even in modern times, the elegant resilience of the common-law tradition is its capacity to stay on its intended course despite the inevitable, but thankfully few, questionable deviations. Properly understood, stare decisis seeks to find a new judicial opinion's place within the "fabric of law," *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 233-34 (1995), rather than to take every newly discovered thread and attempt to weave a wholly new quilt. As Chief Justice Roberts has explained, "Stare decisis is a doctrine of preservation, not transformation. It counsels deference to past mistakes, but provides no justification for making new ones." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 384 (2010) (Roberts, C.J., concurring).

---

give the like judgment, he being sworn to judge according to law."); 1 James Kent, Commentaries on American Law 442 (1826) (describing judicial decisions as the "highest evidence which we can have of the law applicable to the subject, and the judges are bound to follow that decision so long as it stands unreversed, unless it can be shown that the law was misunderstood or misapplied in that particular case"); 2 The Works of the Honourable James Wilson, L.L.D. 303 (Bird Wilson ed., 1804) (stating that judicial decisions should "be considered as strong evidence of the law" for a judge's "duty and his business is, not to make the law, but to interpret and apply it").

19

II.

Several Virginia cases, all deserving the respect of stare decisis, have distinguished between misnomers and misjoinders.  They uniformly use the same definitional structure:  Suing the *correct* person, while *incorrectly* stating his name, constitutes a misnomer.  Suing the *incorrect* person, while *correctly* stating his name, constitutes a misjoinder.  When described in its most succinct form, "[a] misnomer is a mistake in name, but not person."  *Rockwell v. Allman*, 211 Va. 560, 561 (1971), *superseded by statute on other grounds*, 1991 Acts ch. 693, at 1298 (codified as amended at Code § 8.01-229(B)(2)(b)); *see also Ricketts*, 293 Va. at 111.  To understand this distinction consistently, our search must go deeper than a cursory citation to *Volk*.

A.  Misnomer — Not Misjoinder

In an early case involving a true misnomer, *Baldwin v. Norton Hotel, Inc.*, a plaintiff sued "Norton Hotel, Incorporated," a company that did not exist.  163 Va. 76, 79 (1934).  The intended defendant, "Norton Realty Corporation," owned and operated the hotel using the trade name "Hotel Norton."  *Id.*  We held that the plaintiff naming the defendant as "Norton Hotel, Incorporated" was a misnomer because the "wrong name" used by the plaintiff was the "name by which [the real] defendant was known to the public."  *Id.*

Similarly, in *Jacobson v. Southern Biscuit Co.*, the plaintiffs sued "Southern Biscuit Company, Incorporated, a Virginia corporation" located at "Terminal Place, Richmond, Virginia."  198 Va. 813, 814 (1957).  The real defendant, "Weston Biscuit Company, Inc.," purchased "Southern Biscuit Company, Inc." and dissolved it but continued to use "Southern Biscuit Company" as a "trading as" name.  *Id.* at 815-16.  Since the parties did not change and only the registered company name was substituted in place of a trade name, we held that the

20

mistake was a mere misnomer. *Id.* at 817-18 ("If the right party is before the court although under a wrong name, an amendment to cure a misnomer will be allowed.").

In *Arminius Chemical Co. v. White's Administratrix*, the plaintiff filed suit against "Arminius Chemical Company, a corporation created by and existing under the laws of the state of Virginia," and the summons was delivered to the agent of "Arminius Chemical Company, Incorporated." 112 Va. 250, 265-66 (1911). The defendant company pleaded that the agent could not be legally served with process because Arminius Chemical Company and Arminius Chemical Company, Incorporated "were separate and distinct legal entities." *Id.* at 266. Arminius Chemical Company was a West Virginia company that had conveyed its property by deed to the company Arminius Chemical Company, Incorporated, which had been incorporated under Virginia laws. *See id.* The circuit court rejected the defendant's argument and permitted the plaintiff to amend the pleading by inserting "Incorporated" after "Company." *Id.* We agreed with the circuit court because "[t]here was at the time of the institution of this suit but one company which was Arminius Chemical Company, Incorporated," its agent was properly served, and "Arminius Chemical Company, Incorporated, was thereby brought before the Court." *Id.*

### B. Misjoinder — Not Misnomer

Our caselaw also includes several cases involving misjoinders. The most recent was *Ricketts*, a unanimous decision issued a year after the 4-3 decision in *Volk,* in which the plaintiff filed a negligence claim arising out of a vehicle accident after she had filed for bankruptcy. *See Ricketts*, 293 Va. at 104. The defendant moved for summary judgment, alleging that the plaintiff lacked standing because she had failed to exempt the claim from her bankruptcy estate, and thus, only the bankruptcy trustee had standing. *See id.* The trial court granted the motion for summary judgment, and because the statute of limitations had expired at the time of the court's

21

ruling, the plaintiff moved to amend her pleadings to name the bankruptcy trustee as the plaintiff "due to the misnomer." *Id.* at 105. Both the circuit court and this Court rejected the plaintiff's contention that the error was a mere misnomer. *See id.* at 106, 111. Because the plaintiff and the bankruptcy trustee were "not the same person" and because the "right person . . . was not incorrectly named" but "[r]ather, the 'wrong person,' . . . was named," we held that the pleading error was "not a misnomer." *Id.* at 111.

In *Estate of James v. Peyton*, the plaintiff filed a negligence claim against Robert Judson James for personal injuries caused by a vehicle accident. 277 Va. 443, 447 (2009). After the plaintiff became aware that James had died prior to the filing of the suit, the plaintiff filed a motion for leave to amend the pleading to substitute the named defendant as "the Estate of Robert Judson James, Administrator, Edwin F. Gentry, Esq." *Id.* at 447-48. A motion for summary judgment filed on behalf of "the Estate of Robert Judson James, Administrator, Edwin F. Gentry, Esq." contended that the suit "was a nullity because the named defendant was an estate" and that "naming the estate [was] not a misnomer" because "this is not merely a mis-ordering of words" as "the personal representative and the estate are two different entities." *Id.* at 448-49 (alterations omitted).

The plaintiff in *Estate of James* sought to "correct[]" his pleading to name the defendant as "Edwin F. Gentry, Esq., Administrator of the Estate of Robert Judson James" because "Gentry had actual notice of the action and would not be prejudiced by allowing the further amendment." *Id.* at 449. The circuit court held that the administrator, rather than the estate, had been properly identified as the defendant, but we reversed following an interlocutory appeal. *See id.* at 450, 456. We found that "the most straightforward reading of the amended motion for judgment identifies 'the Estate of ROBERT JUDSON JAMES' as the party defendant," and "[w]hile the

22

caption of the pleading goes on to identify Gentry as the administrator of the estate and the body of the pleading recites the fact of his qualification as administrator, at best these references only serve to identify James' estate more specifically." *Id.* at 455. We thus held that the error was a misjoinder, not a misnomer, because a "misnomer arises when the right person is incorrectly named, not where the wrong defendant is named," and "because a misjoinder is simply not subject to being legitimized by substituting the correct party." *Id.* at 456 (alteration and citation omitted).

*Estate of James* relied heavily upon the reasoning in *Swann v. Marks*, in which the plaintiff filed a personal injury action against an estate for injuries sustained in a vehicle accident, *Swann*, 252 Va. 181, 182-83 (1996). After the qualification of the personal representative for the estate, the plaintiff moved to amend his pleading by substituting the personal representative for the estate as the named defendant, and the trial court granted the motion "to correct [a] misnomer." *Id.* at 183. We held that "the substitution of a personal representative for the 'estate' is not the correction of a misnomer" because a "[m]isnomer arises when the right person is incorrectly named, not where the wrong defendant is named." *Id.* at 184. Since the personal representative and the estate "are two separate entities," "one cannot be substituted for another under the concept of correcting a misnomer." *Id.*

Similarly, in *Rockwell*, a plaintiff filed a negligence action arising out of a vehicle accident in Roanoke County allegedly caused by Jacie Shotwell, the driver of the other vehicle. 211 Va. at 560-61. Shotwell died from her injuries. Department of Motor Vehicles information had identified Roanoke as Shotwell's residence, and since no administrator had been appointed for her estate in Roanoke, the plaintiff arranged to have the City Sergeant of Roanoke, Kermit Allman, appointed as her administrator. *See id.* at 560. The plaintiff then sued that officer as the

23

administrator of Shotwell's estate, naming the defendant as "Kermit E. Allman, Administrator." *Id.* Allman later discovered that the decedent's two daughters had been appointed as co-administrators in Botetourt County, where Shotwell in fact had resided at the time of her death, before Allman was appointed by the Circuit Court of the City of Roanoke, and thus, his appointment as administrator in Roanoke was void. *See id.* at 561.

Seeking leave to amend to include the correct administrators, the plaintiff in *Rockwell* claimed the matter was a mere misnomer. Rejecting that argument, we held that the subsequently appointed administrator, Allman, was a different *party* than the two co-administrators of the same estate who had been appointed earlier in the correct county. *See id.* The problem was not that Allman was misnamed but that he was named at all. In short, Allman "was not the right party." *Id.*[5] *See generally* Sinclair & Middleditch, *supra* note 1, § 11.2[C], at 826 (observing that "the Supreme Court made it clear in *Rockwell v. Allman* that the misnomer statute does not permit a party to change the person against whom the action is brought" and that "[w]hen the amendment attempts to deal with a change from the wrong party, who is before the court, to a different defendant who is not, the misnomer provision statute does not operate").

In an analogous context, we rejected the plaintiffs' argument in *Miller v. Highland County* that naming the County as the defendant instead of the Board of Supervisors was a mere misnomer that could be corrected by adding the Board as a party. *See* 274 Va. 355, 367-68

---

[5] On appeal, the plaintiff noted that opposing counsel had conceded before the circuit court that Shotwell's insurance company "knew who the administrators were" of her estate at the time the suit was filed. Petition for Appeal at 5, *Rockwell*, 211 Va. 560 (Record No. 7301). Contending that the court should have allowed plaintiff to amend his pleadings to correct the alleged misnomer, plaintiff argued that the insurance company "knew the facts and chose to do nothing about them, and now the time of the statute of limitations has run and no new suit can be successfully brought." *Id.* at 22. Unpersuaded by this argument, we implicitly rejected it in *Rockwell* by holding that an amendment was not permitted because "the party before the court," Allman, "was not the right party." *Rockwell*, 211 Va. at 261.

(2007). The plaintiffs' declaratory judgment action alleged that the Board had acted arbitrarily and capriciously in approving an amendment to a zoning ordinance, but the complaint named only the County as the sole defendant. *See id.* at 362. We held that the plaintiffs' failure to name the Board as a defendant was not a misnomer because "[a] misnomer occurs when the right person or entity is incorrectly named," and the complaint "did not incorrectly name the right entity, but named a different entity." *Id.* at 368.

Likewise, in *Cook v. Radford Community Hospital, Inc.*, a husband was appointed by the circuit court as legal guardian for his wife, who was then incapacitated after alleged medical malpractice during treatment she had received as a patient at Radford Community Hospital. 260 Va. 443, 446 (2000). Almost two years later — without seeking any court order to terminate the guardianship after her recovery — the incapacitated wife filed a medical malpractice action in her own name, rather than by her guardian, in violation of then-applicable statutory provisions requiring all actions by a ward to be prosecuted only by the court-appointed fiduciary. *See id.* We found that the pleading error was not a misnomer because "[a] misnomer 'arises when the right person is incorrectly named, not where the wrong [person] is named.'" *Id.* at 451 (citation omitted). The "right person" was the court-appointed guardian, who was not incorrectly named; instead, "the wrong person," the ward, who lacked standing to sue on her own behalf, was named as the plaintiff. *Id.*

In *Herndon v. St. Mary's Hospital, Inc.*, the parents of a minor child injured during medical care provided before and after his delivery filed a medical malpractice action in their own names as the "next friend[s]" of the minor child. 266 Va. 472, 474 (2003). We upheld the circuit court's dismissal of the suit, holding that the suit could only be brought in the name of the minor child as "the real party in interest in such action," not in the names of the parents as the

25

minor child's next friends. *Id.* at 476-77. To hold otherwise, we reasoned, would "confer on parents the status of a real party in interest in their minor child's action." *Id.* at 477. While the definitions of misnomer and misjoinder were not discussed in *Herndon*, the logic of our reasoning is relevant here — "the real party in interest" must be named, *id.* at 476, even if the allegations make clear the identity of the injured party.

The General Assembly has intervened in this line of precedent with respect to two categories of misjoinder: business trade names and suits against estates. Subsection A of Code § 8.01-6.2 allows an amendment to a complaint to substitute "another entity" (described as the "correct" party) for an incorrectly named "party" with a similar trade or corporate name if the correct party or its agent had notice of the suit before the statute of limitations has run. Subsection B of the same statute provides similar relief from the applicable statute of limitations for certain flawed suits "against the estate of a decedent." These statutory exceptions prove the general rule. Suing the correct person, while incorrectly stating his name, constitutes a misnomer. Suing the incorrect person, while correctly stating his name, constitutes a misjoinder. No other statutory exception outside the two categories mentioned in Code § 8.01-6.2 has ever been recognized by the legislature.

### C. The Defendant-Got-Lucky Factor

The majority appears to believe that if the intended target of litigation somehow learns of the plaintiff's misjoinder mistake, either by happenstance or from reading the complaint, then the mistake is no longer a misjoinder. It is transformed into a misnomer. If that were true, a plaintiff could mistakenly sue Honda for a product defect in a Camry. As long as Toyota learned of the suit and remembered that it, not Honda, manufactured the Camry, then what was an obvious misjoinder would be downgraded to a mere misnomer. This simple fallacy seems to be fully

26

embraced by the majority. The entire majority opinion can be summarized by just one of its sentences: "Hampton [the plaintiff] sued the correct person — the driver — but used the wrong name," *ante* at 6, the name of the owner. That is no different from saying, to use the Toyota-Honda hypothetical, that the plaintiff sued the "correct" manufacturer — Toyota — but used the "wrong name," Honda.

The majority's recitation of the complaint veils this conceptual flaw. The majority quotes the allegations in the initial complaint that named Michael P. Meyer as the defendant and then characterizes each of the allegations as stating generically that "*the driver*" performed each of the negligent acts leading to the accident. *See, e.g.*, *ante* at 1 ("The complaint alleged that at the time of the collision *the driver* of the Suburban 'was approaching a red light on Midlothian Turnpike and attempting to make a left hand turn.'" (emphasis added)); *ante* at 1 ("It alleged that *the driver* had a duty 'to operate his vehicle with reasonable care and with due regard for others using the road.'" (emphasis added)); *ante* at 1-2 ("It alleged that *the driver* 'carelessly, recklessly, and negligently operated his vehicle, disregarding a red light, and crashing into the front of the vehicle in which' Hampton was a passenger." (emphasis added)); *ante* at 2 ("It alleged that *the driver* of the Suburban was negligent [in various ways]." (emphasis added)).

The full quotation of each allegation from the complaint, however, does not speak generically of "the driver" performing the negligent acts. Instead, in every instance, the complaint specifically names the "*Defendant, Michael P. Meyer*" as the tortfeasor using his correct name. *See, e.g.*, J.A. at 7 ("At the time and place aforesaid, *Defendant, Michael P. Meyer*, was approaching a red light on Midlothian Turnpike and attempting to make a left hand turn . . . ." (emphasis added)); *id.* at 8 ("[I]t was the duty of the *Defendant, Michael P. Meyer* to operate his vehicle with reasonable care and with due regard for others using the road."

27

(emphasis added)); *id.* ("Notwithstanding said duties, *Defendant, Michael P. Meyer*, did then and there so carelessly, recklessly, and negligently operate[] his vehicle, by disregarding a red light, and crashing into the front of the vehicle in which Plaintiff, Calvin Hampton was riding." (emphasis added)); *id.* ("*Defendant, Michael P. Meyer*, was negligent [in various ways]." (emphasis added)).

The complaint identifies "Michael P. Meyer" ten times. *Id.* at 7-9. On each occasion, he is alleged to be the defendant who had negligently driven the vehicle and had injured the plaintiff. The "WHEREFORE" clause demands judgment against "Michael P. Meyer" alone. *Id.* at 9. The complaint nowhere generically identifies "the driver" as the defendant. *Compare id.* at 7-9, *with ante* at 1-2. The multiple substitutions of "the driver" (generically stated in the majority opinion) for "Michael P. Meyer" (specifically stated in the complaint) are distracting but not enough so to obscure the obvious fact that the plaintiff did not mistakenly spell the correct party's name. The plaintiff sued and correctly spelled the wrong party's name.

Once again, "[a] misnomer 'arises when the right person is incorrectly named, not where the wrong person is named.'" *Ricketts*, 293 Va. at 110-11. In the present case, it is alleged that the "right person," *id.*, knew that his legal adversary had mistakenly sued the "wrong person," *id.* If that were legally dispositive, however, we have incorrectly decided several prior misjoinder cases in which this fact was clearly present. *See, e.g.*, *Estate of James*, 277 Va. at 455-56; *Miller*, 274 Va. at 368; *Cook*, 260 Va. at 451; *Swann*, 252 Va. at 184. Summarizing several of these cases, Justice Koontz has explained:

> As in *Cook* and *Miller*, there was no dispute in *Swann* as to whether the pleading naming the incorrect party could have been interpreted as actually naming the proper party. In each case, respectively, the pleading clearly named the incompetent, the

28

> locality, and the estate, not the guardian, the governing body, or
> the personal representative . . . .
>
> . . . .
>
> Because we have determined that the estate was the party
> defendant named by the amended motion for judgment, it follows
> that this case is controlled by *Swann*, unless there is merit in
> Peyton's contentions that *Swann* can be distinguished on the
> ground that despite the "misnomer" of the proper party defendant,
> here [the administrator], the proper party, was identified in the
> amended motion for judgment and was actually served with that
> pleading. Accordingly, [the plaintiff] contends that there would be
> no prejudice in allowing a correction of the "misnomer." We
> disagree with those contentions.

*Estate of James*, 277 Va. at 454, 456.[6]

Based upon this reasoning, the unanimous Court in *Estate of James* held that the

plaintiff's attempt to change the defendant's name from "Estate of Robert Judson James,

Administrator, Edwin F. Gentry, Esq." (the incorrect party) to "Edwin F. Gentry, Esq.,

Administrator of the Estate of Robert Judson James" (the correct party) constituted a misjoinder,

not a misnomer. *Id.* at 456. In *Estate of James*, as well as many of the other Virginia misjoinder

cases, the intended target of the litigation would have known of the misjoinder mistake. But in

none of those cases did that fact, by itself, change the legal nature of the mistake from a

misjoinder into a misnomer.

---

[6] The majority mentions a footnote in my *Volk* dissent, *ante* at 11 n.4, in which I noted that "[t]he plaintiff has never alleged that anyone misled her or that she reasonably relied on incorrect information supplied by others," *Volk*, 291 Va. at 69 n.2 (Kelsey, J., dissenting). The majority's intended implication is that, because I mentioned that factual omission in *Volk*, I must have thought it was legally relevant or perhaps even legally dispositive. My reason in pointing out that factual omission in *Volk*, however, was to eliminate the need to address at length its legal irrelevance — not to sub silentio concede the salience of some unspoken legal principle. That footnote was similar to saying, "Judge, the plaintiff did not plead a breach of contract claim." Saying so, however, does not imply a concession that the breach of contract claim would have been legally successful had it been pleaded.

III.

In sum, the plaintiff in this case correctly named but incorrectly sued the "wrong person" — the vehicle owner — which by definition was a misjoinder. If the plaintiff had incorrectly named but correctly sued the "right person" — the vehicle driver — this would have been a misnomer. The majority's reasoning to the contrary is defeated by, not justified by, stare decisis.

I respectfully dissent.